UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA

               Plaintiff,

    v.

CLEAR & CLEAR, P.A., THOMAS J.
CLEAR III, RICARDO MENDEZ, CARLOS
SANDOVAL-SMITH, PEDRO ANTHONY
GONZALES, JOSE DAVID VASQUEZ,
ANTIONIO ABELARDO BARRON, and
MARY NICOLE TIXIER,

               Defendants.

Civil Action No.: 1:25-cv-00259-KRS-JMR

**FIRST AMENDED COMPLAINT FOR
RESCISSION AND DECLARATORY JUDGMENT**

Travelers Casualty and Surety Company of America ("Travelers"), for its First Amended Complaint for Rescission and Declaratory Judgment against defendants Clear & Clear, P.A. (the "Firm"), Thomas J. Clear III ("Clear"), Ricardo Mendez ("Mendez"), Carlos Sandoval-Smith ("Sandoval-Smith"), Pedro Anthony Gonzales ("Gonzales"), Jose David Vasquez ("Vasquez"), Antionio Abelardo Barron ("Barron"), and Mary Nicole Tixier ("Tixier"), alleges as follows:

**NATURE OF THE ACTION**

1. Travelers brings this lawsuit to (1) rescind two professional liability insurance policies Travelers issued to the Firm (the "Policies"), and (2) obtain judicial determinations and declarations, pursuant to 28 U.S.C. §§ 2201 and 2202, of the rights and obligations of the parties with respect to two pending state court lawsuits filed against Clear, Mendez, and the Firm.

2. Specifically, Travelers seeks to rescind the Policies due to misrepresentations and concealments of facts in the Firm's applications for the Policies, when Clear misrepresented and concealed his awareness of criminal conduct that he and Mendez have now admitted they engaged

in for many years. Travelers further seeks, in the alternative, a declaration that it owes no coverage for either lawsuit – in which the underlying plaintiffs seek recovery from, among others, Clear and Mendez under the federal and New Mexico criminal racketeering statutes – because the suits arise out of alleged criminal and dishonest conduct, and a Policy exclusion bars coverage for **Claims**[1] arising out of such conduct.

## PARTIES

3. Travelers is an insurance company incorporated under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut. Travelers, therefore, is a citizen of Connecticut.

4. The Firm is a professional corporation organized and existing under the laws of New Mexico and maintains its principal place of business in New Mexico. The Firm, therefore, is a citizen of New Mexico.

5. Clear is an individual who, upon information and belief, is domiciled in New Mexico. Clear, therefore, is a citizen of New Mexico.

6. Mendez is an individual who, upon information and belief, is domiciled in New Mexico. Mendez, therefore, is a citizen of New Mexico.

7. Sandoval-Smith is an individual who, upon information and belief, is domiciled in New Mexico. Sandoval-Smith, therefore, is a citizen of New Mexico.

8. Gonzales is an individual who, upon information and belief, is domiciled in New Mexico. Gonzales, therefore, is a citizen of New Mexico.

9. Vasquez is an individual who, upon information and belief, is domiciled in New Mexico. Vasquez, therefore, is a citizen of New Mexico.

---

[1] Terms appearing in bold font are defined in the Policies.

10. Barron is an individual who, upon information and belief, is domiciled in New Mexico. Barron, therefore, is a citizen of New Mexico.

11. Tixier is an individual who, upon information and belief, is domiciled in New Mexico. Tixier, therefore, is a citizen of New Mexico.

## JURISDICTION AND VENUE

12. Federal subject matter jurisdiction exists in this action, pursuant to 28 U.S.C. § 1332, because it is an action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the District of New Mexico because a substantial part of the events giving rise to Travelers' claims for rescission and declaratory relief occurred in this district.

## THE SANDOVAL-SMITH LAWSUIT

14. Sandoval-Smith filed suit against Clear and Mendez, among others, on October 1, 2024, in the Second Judicial District Court, Bernalillo County, New Mexico, captioned *Carlos Sandoval-Smith v. The City of Albuquerque*, Case No. D-202-CV-2024-07742 (the "Sandoval-Smith Lawsuit").

15. Sandoval-Smith amended his complaint on April 2, 2025, adding the Firm as a defendant. A true and correct copy of the First Amended Complaint filed in the Sandoval-Smith Lawsuit is attached hereto as **Exhibit 1**.

16. In his suit, Sandoval-Smith alleges that Clear and Mendez had an agreement with various Albuquerque police officers ("APOs") that the APOs would refer people charged with driving while intoxicated ("DWI") to Clear (an attorney) and Mendez (Clear's paralegal/legal assistant) for legal services, and the APOs would agree not to attend pre-trial interviews or testify in those individuals' criminal cases in exchange for consideration from Clear and Mendez.

3

17. Sandoval-Smith further alleges that after he was arrested for DWI, an APO informed him, while he was in police custody, that the APO had an attorney friend who could make the DWI charge go away.

18. Sandoval-Smith asserts in his lawsuit that the arresting APO provided Sandoval-Smith with Clear's contact information, and that Sandoval-Smith subsequently received a call from Clear's office.

19. Sandoval-Smith alleges that he met with Mendez at Clear's office, at which time Mendez informed Sandoval-Smith that their office would guarantee that the DWI would not go on Sandoval-Smith's record if he retained Clear, and Mendez demanded payments from Sandoval-Smith, some of which Clear and Mendez planned to use to compensate the arresting APO for his participation in the alleged criminal enterprise.

20. Sandoval-Smith further alleges that APOs engaged in the same or similar conduct to compel or attempt to compel individuals arrested for DWI to retain Clear as an attorney and to refrain from retaining any other attorney in exchange for compensation from Clear and Mendez.

21. Sandoval-Smith asserts that the DWI and speeding charges against him were subsequently dismissed.

22. Sandoval-Smith alleges that Clear and Mendez were part of a criminal enterprise and that members of the enterprise engaged in acts of bribery, fraud and extortion, all of which are incidents of racketeering as defined by NMSA 1978, §30-42-3(D).

23. Sandoval-Smith further alleges that Clear and Mendez, as persons employed by or associated with the enterprise, conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs by engaging in a pattern of racketeering activity.

24. Sandoval-Smith also alleges that the Firm was negligent in hiring and training Clear and Mendez, and that it was further negligent in their supervision and retention.

25. The Sandoval-Smith Lawsuit seeks judgement against Clear, Mendez, and the Firm for compensatory damages, hedonic damages, punitive damages, interest, declaratory relief, treble damages and attorneys' fees and costs.

26. Sandoval-Smith contends that he is an assignee of Clear pursuant to a purported assignment to Sandoval-Smith of Clear's rights under the Policies.

## THE GONZALES LAWSUIT

27. Gonzales, Vasquez, Barron, Tixier, and the John and Jane Does (collectively, the "Gonzales Parties") filed a class action lawsuit against Clear and Mendez, among others, on February 12, 2025, in the matter captioned *Pedro Anthony Gonzales, et al. v. The City of Albuquerque et al.,* venued in the State of New Mexico County of Bernalillo Second Judicial District Court under Case No. D-202-CV-2025-01387 ("the Gonzales Lawsuit").

28. The Gonzales Parties amended their complaint in the Gonzales Lawsuit on March 14, 2025, adding the Firm as a defendant. A true and correct copy of the First Amended Class Action Complaint filed in the Gonzales Lawsuit is attached hereto as **Exhibit 2**.

29. The Gonzales Parties allege the same DWI extortion scheme as Sandoval-Smith.

30. Specifically, the Gonzales Parties allege in the Gonzales Lawsuit that, since at least 2008, Clear and Mendez were part of a criminal scheme with the APOs, who would agree not to attend pre-trial interviews or testify in proceedings in exchange for consideration from Clear and Mendez, including cash, favors, and other valuable property.

31. The Gonzales Parties allege that all defendants in the Gonzales Lawsuit, including Clear, Mendez, and the Firm, conspired and had a meeting of the minds to deprive them of their

constitutional rights under the Fourth and Fourteenth Amendments of the U.S. Constitution in violation of 42 U.S.C. § 1983.

32. The Gonzales Parties further allege that Clear and Mendez, among others, committed Racketeering in violation of NMSA 1978, § 30-42-4, that they committed extortion to compel the Gonzales Parties to hire them as their attorney, and that they reinvested the proceeds of the racketeering activity back into the enterprise.

33. The Gonzales Parties similarly allege that Clear, Mendez, and other defendants committed extortion as part of a racketeering enterprise in violation of 18 U.S.C. § 1962.

34. The Gonzales Parties assert one count against the Firm for Negligent Hiring, Training, Supervision, and Retention of Clear and Mendez.

35. The Gonzales Parties request class certification, as well as compensatory, hedonic, punitive, and treble damages; pre- and post-judgment interest; declaratory relief; and attorneys' fees and costs.

36. The Gonzalez Parties contend that they are assignees of Clear pursuant to a purported assignment to the Gonzalez Parties of Clear's rights under the Policies.

## THE CRIMINAL CASES AND PLEA AGREEMENTS

37. On January 24, 2025, the U.S. District Attorney for the District of New Mexico, on behalf of the United States of America, filed *United States of America v. Ricardo Mendez*, case number 25-139 DHU in the U.S. District Court for the District of New Mexico (the "Mendez Criminal Case").

38. On January 24, 2025, Mendez pled guilty, pursuant to a Plea Agreement filed in the Mendez Criminal Case (the "Mendez Plea Agreement"), to violation of 18 U.S.C. § 1962(d) (RICO Conspiracy); violation of 18 U.S.C. § 666(a)(2) (Bribery of an Agent of an Organization

Receiving Federal Funds); violation of 18 U.S.C. § 1951(a) (Interference with Commerce by Extortion Under Color of Official Right, 18 U.S.C. § 2 Aiding and Abetting); and violation of 18 U.S.C. § 1951(a) (Conspiracy to Commit Interference with Commerce by Extortion Under Color of Official Right, 18 U.S.C. § 2 Aiding and Abetting). A true and correct copy of the Mendez Plea Agreement is attached to this Complaint as **Exhibit 3**.

39. In the Mendez Plea Agreement, Mendez admitted, among other things:

> In 2007, I began working for co-conspirator 1's [Clear] law firm,…I admit that, since at least 2008, this DWI scheme I participated in constituted an enterprise (the DWI Enterprise) that engaged in a pattern of racketeering activity that included multiple acts of bribery, chargeable under New Mexico state law, as well as multiple acts of interference commerce by extortion. I further admit that the DWI Enterprise was ongoing organization with members who functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise. As part of this conspiracy, I admit that I agreed to commit, and did commit, at least two acts of racketeering in the conduct of the affairs of the DWI Enterprise.

40. On February 12, 2025, the U.S. District Attorney for the District of New Mexico, on behalf of the United States of America, filed *United States of America v. Thomas J. Clear III*, case number 25-258 MLG in the U.S. District Court for the District of New Mexico (the "Clear Criminal Case").

41. On February 12, 2025, Clear pled guilty, pursuant to a Plea Agreement filed in the Clear Criminal Case (the "Clear Plea Agreement"), to violation of 18 U.S.C. § 1962(d) (RICO Conspiracy); violation of 18 U.S.C. § 666(a)(2) (Bribery of an Agent of an Organization Receiving Federal Funds); violation of 18 U.S.C. § 1951(a) (Attempted Interference with Commerce by Extortion under Color of Official Right, 18 U.S.C. § 2 Aiding and Abetting); and violation of 18 U.S.C. § 1951(a) (Interference with Commerce by Extortion Under Color of Official Right, 18 U.S.C. § 2 Aiding and Abetting). A true and correct copy of the Clear Plea Agreement is attached to this Complaint as **Exhibit 4.**

42. In the Clear Plea Agreement, Clear admitted, among other things:

> I admit that, since at least the late 1990s, and in violation of the New Mexico Rules of Professional Conduct that applied to me as a licensed attorney, I was the leader of an enterprise (the DWI Enterprise) that engaged in a pattern of racketeering activity that included multiple acts of bribery, chargeable under New Mexico state law, as well as multiple acts of interference commerce by extortion. I further admit that the DWI Enterprise was an ongoing organization with members who functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise. As part of this conspiracy, I admit that I agreed to commit, and did commit, at least two acts of racketeering in the conduct of the affairs of the DWI Enterprise.

## THE 2023 APPLICATION

43. Travelers first provided professional liability insurance coverage to the Firm for the **Policy Period** May 10, 2022, to May 10, 2023.

44. In February 2023, the Firm sought a renewal of the then-existing Travelers insurance policy.

45. The Firm submitted to Travelers a 1st Choice$^+$ Lawyers Professional Liability Coverage Small Firm Application, dated February 14, 2023, and signed by Clear (the "2023 Application"), seeking renewal of the previously issued Travelers lawyers professional liability insurance coverage. A true and correct copy of the 2023 Application is attached to this Complaint as **Exhibit 5** and incorporated into this Complaint.

46. The 2023 Application included the following question and the Firm's negative answer:

> 27. Do you or any member or employee of your firm have knowledge of any incident, act, error, or omission that is or could be the basis of a claim under this proposed professional liability policy?   ☐ Yes  ☒ No
> If yes, please complete a Claim, Suit, or Incident Supplement for each incident, act, error, or omission.

47. Immediately above Clear's signature, the Application states, in relevant part, as follows:

8

> The undersigned Authorized Representative represents that to the best of his or her knowledge and belief, and after reasonable inquiry, the statements provided in this Application are true and complete, and may be relied upon by Travelers as the basis for providing insurance. The Applicant will notify Travelers of any material changes to the information provided.

* * *

<strong><u>THE 2023 POLICY</u></strong>

48. After receiving the 2023 Application, and in reliance on the statements and information contained in it, Travelers issued a claims-made Travelers 1st Choice⁺ Lawyers Professional Liability Policy, No. 107633093, with a policy period May 10, 2023 to May 10, 2024 (the "2023 Policy"). A true and correct copy of the 2023 Policy is attached as **Exhibit 6** and incorporated into this Complaint.

49. The 2023 Policy's limits of liability for "Professional Services" are $1,000,000 for each **Claim**, not to exceed $1,000,000 for all **Claims**, subject to the each **Claim** deductible of $10,000.

50. The Policy's Insuring Agreement states as follows:

> The Company will pay on behalf of the **Insured**, **Damages** and **Defense Expenses** for any **Claim** first made during the **Policy Period** that is caused by a **Wrongful Act** committed on or after any applicable Retroactive Date set forth in ITEM 5 of the Declarations, provided that no **Insured** on the Knowledge Date set forth in ITEM 5 of the Declarations had any basis to believe that such **Wrongful Act** might reasonably be expected to be the basis of a **Claim**.

51. The Policy includes the following definitions, among others:

B.  **Claim** means:
   1. a demand for money or services;
   2. a civil proceeding commenced by service of a complaint or similar pleading; or
   3. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

   against any **Insured** for a **Wrongful Act**.

  A Claim will be deemed to be made on the earliest date such notice thereof is received by any **Principal Insured**.

***

J.  **Insured** means any **Insured Person, Named Insured,** or **Predecessor Firm.**

K.  **Insured Person** means any natural person who:
1. is the sole owner of, or is or was a partner in, the **Named Insured** or **Predecessor Firm**;
2. was or is a member of the board of managers, director, executive officer, or shareholder of the **Named Insured** or **Predecessor Firm**;
3. was or is an employee of the **Named Insured** or **Predecessor Firm**; or
4. was or is an **Independent Contractor** or Of Counsel attorney,

provided that such person is acting within the scope of their duties on behalf of the **Named Insured** or **Predecessor Firm**.

***

M.  **Named Insured** means the person or entity set forth in ITEM 1 of the Declarations.

***

Z.  **Professional Services** means only services in any of the following capacities, and pro-bono services in such capacities, provided that such pro-bono services are performed with the knowledge and consent of the **Named Insured**:

1. Lawyer.
2. Law clerk, paralegal, legal secretary or other legal support staff.
3. Arbitrator or mediator.
4. Lobbyist.
5. Notary public, provided that the Insured Person witnessed and attested to the authenticity of the signature notarized by such Insured Person.
6. Title Agent.
7. Administrator, conservator, receiver, executor, guardian, trustee or any similar fiduciary capacity, directly connected with the Insured's practice of law.

* * *

EE.  **Wrongful Act** means any:

1. actual or alleged act, error, omission, or **Personal Injury Offense** in the rendering of, or failure to render, **Professional Services** or **Non-Profit Services**;
2. actual or alleged act, error, omission, or **Personal Injury Offense** in **Publishing**; or
3. **Network and Information Security Offense,**

10

By the **Named Insured** or any **Predecessor Firm**, or by any other **Insured** while acting within the scope of their duties on behalf of the **Named Insured** or any **Predecessor Firm**.

52. The Policy contains the following exclusion, among others:

E. **Criminal, Dishonest, Fraudulent Or Malicious Conduct**
This policy does not apply to any **Claim** based upon or arising out of any criminal, dishonest, fraudulent or malicious conduct, or other willful violation of laws, committed by any **Insured** or by anyone with the consent or knowledge of any **Insured**, provided that this exclusion will not apply to:
1. any **Insured Person** who did not participate in or have knowledge of such conduct or violation; or
2. the Company's duty to defend, or to pay **Defense Expenses** for, any **Claim** for malicious prosecution or abuse of process.

## THE 2024 APPLICATION

53. In April 2024, the Firm sought a renewal of the 2023 Policy.

54. The Firm submitted to Travelers a 1st Choice$^+$ Lawyers Professional Liability Coverage Small Firm Application, dated April 19, 2024, and signed by Clear (the "2024 Application"), seeking renewal of the previously issued Travelers lawyers professional liability insurance coverage. A true and correct copy of the 2024 Application is attached to this Complaint as **Exhibit 7**.

55. The 2024 Application included the following question and the Firm's negative answer:

> 21. Do you or any member or employee of your firm have knowledge of any incident, act, error, or omission that is or could be the basis of a claim under this proposed professional liability policy?  ☐ Yes  X No
> *If yes, please complete a Claim, Suit, or Incident Supplement for each incident, act, error, or omission.*

56. Immediately above Clear's signature, the Application states, in relevant part, as follows:

> The undersigned Authorized Representative represents that to the best of his or her knowledge and belief, and after reasonable inquiry, the statements provided in this Application are true and complete, and may be

11

relied upon by Travelers as the basis for providing insurance. The Applicant will notify Travelers of any material changes to the information provided.

\* \* \*

## THE 2024 POLICY

57. After receiving the 2024 Application, and in reliance on the statements and information contained in it, Travelers issued a claims-made Travelers 1st Choice[+] Lawyers Professional Liability Policy, No. 107633093, with a policy period May 10, 2024, to May 10, 2025 (the "2024 Policy"). A true and correct copy of the 2024 Policy is attached as **Exhibit 8** and incorporated into this Complaint.

58. The 2024 Policy's limits of liability for "Professional Services" are $1,000,000 for each **Claim**, not to exceed $1,000,000 for all **Claims**, subject to each **Claim** deductible of $10,000.

59. The Insuring Agreement and relevant Definitions and Exclusion included in the 2023 Policy, as set forth above in paragraphs 48 through 50 of this Amended Complaint, are also included in the 2024 Policy.

## COUNT I
### (2023 Policy Recission)

60. Travelers realleges paragraphs 1 through 59 above as if set forth fully as this paragraph 60.

61. The 2023 Application contained a misrepresentation or concealment of fact in the negative response to question 27 regarding whether any member or employee of the Firm had knowledge of any incident, act, error, or omission that is or could be the basis of a claim under the Policy.

62. The incidents, acts and omissions identified in the Clear Plea Agreement and the Mendez Plea Agreement were incidents, acts, or omissions that were or could be the basis of a

12

claim under the Policy, and the answer to the 2023 Application's question 27 was, therefore, a misrepresentation or concealment of fact.

63. Had Travelers been made aware of the facts admitted by Clear and Mendez in the Clear Plea Agreement and the Mendez Plea Agreement, Travelers would not have issued the 2023 Policy.

64. As a result of the material misrepresentation or concealment of fact in the 2023 Application, the Court should rescind the 2023 Policy and declare that there is no coverage for any **Claim** made against the Firm or any other **Insured** under the 2023 Policy, including without limitation, the Gonzales Lawsuit and the Sandoval-Smith Lawsuit.

65. Travelers has made reasonable efforts to tender to the Firm all amounts paid as premium for the 2023 Policy, and stands ready to pay to the Firm all such amounts.

WHEREFORE, Travelers respectfully requests that the Court enter a judgment:

    a.    Declaring the 2023 Policy void;

    b.    Rescinding the 2023 Policy;

    c.    Declaring that Travelers has no duty to defend or indemnify Clear, Mendez, and the Firm against the Sandoval-Smith Lawsuit, the Gonzales Lawsuit, or any other **Claim**; and

    d.    Granting such other relief as the Court may deem just and proper.

## COUNT II
### (2024 Policy Recission)

66. Travelers realleges paragraphs 1 through 59 above as if set forth fully as this paragraph 66.

67. The 2024 Application contained a misrepresentation or concealment of fact in the negative response to question 21 regarding whether any member or employee of the Firm had knowledge of any incident, act, error, or omission that is or could be the basis of a claim under the Policy.

13

68. The incidents, acts and omissions identified in the Clear Plea Agreement and the Mendez Plea Agreement were incidents, acts, or omissions that were or could be the basis of a claim under the Policy, and the answer to the 2024 Application's question 21 was, therefore, a misrepresentation or concealment of fact.

69. Had Travelers been made aware of the facts admitted by Clear and Mendez in the Clear Plea Agreement and the Mendez Plea Agreement, Travelers would not have issued the 2024 Policy.

70. As a result of the material misrepresentation in the 2024 Application, the Court should rescind the 2024 Policy and declare that there is no coverage for any **Claim** made against the Firm or any other **Insured** under the 2024 Policy, including without limitation, the Lawsuit.

71. Travelers has made reasonable efforts to tender to the Firm all amounts paid as premium for the 2024 Policy, and stands ready to pay such amounts to the Firm.

WHEREFORE, Travelers respectfully requests that the Court enter a judgment:

    a. Declaring the 2024 Policy void;

    b. Rescinding the 2024 Policy;

    c. Declaring that Travelers has no duty to defend or indemnify Clear, Mendez, and the Firm against the Sandoval-Smith Lawsuit, the Gonzales Lawsuit, or any other **Claim**; and

    d. Granting such other relief as the Court may deem just and proper.

### COUNT III
### In the Alternative - Declaratory Judgment
### No Duty to Defend or Indemnify the Sandoval-Smith Lawsuit -
### Criminal Conduct Exclusion

72. Travelers realleges paragraphs 1 through 59 above as if set forth fully as this paragraph 72.

73. Pursuant to the Criminal Conduct Exclusion (Exclusion E) contained in the 2023 Policy and the 2024 Policy, the Policies do not apply to any **Claim** based upon or arising out of

any criminal, dishonest, fraudulent or malicious conduct or other willful violation of laws, committed by any **Insured** or by anyone with the consent or knowledge of any **Insured**.

74. All counts directed against Clear, Mendez and the Firm in the Sandoval-Smith Lawsuit are based upon and arise out of alleged criminal and dishonest conduct, or other willful violation of laws, committed by Clear and Mendez.

75. Because the Criminal Conduct Exclusion applies to the Sandoval-Smith Lawsuit, and therefore precludes coverage, Travelers has no duty to defend or indemnify Clear, Mendez, and the Firm for the Sandoval-Smith Lawsuit under the Policies.

76. An actual and justiciable controversy exists between Travelers, Clear, Mendez, the Firm, and Sandoval-Smith with respect to their respective duties and obligations under the Policies, and specifically whether Travelers has a duty to defend or indemnify Clear, Mendez, and the Firm in connection with the Sandoval-Smith Lawsuit.

WHEREFORE, Plaintiff Travelers Casualty and Surety Company of America respectfully requests that this Court:

a. Declare the rights and obligations of the parties under the Policy;
b. Enter a declaratory judgment finding that, pursuant to the terms and conditions of the 2023 Policy and the 2024 Policy, Travelers has no obligation to defend or indemnify Clear, Mendez, or the Firm in connection with the Sandoval-Smith Lawsuit; and
c. Grant Travelers its costs and such other relief as the Court may deem just and proper.

### COUNT IV
**In the Alternative - Declaratory Judgment**
**No Duty to Defend or Indemnify the Gonzales Lawsuit -**
**Criminal Conduct Exclusion**

77. Travelers realleges paragraphs 1 through 59 above as if set forth fully as this paragraph 77.

78. Pursuant to the Criminal Conduct Exclusion (Exclusion E) contained in the 2023 Policy and the 2024 Policy, the Policies do not apply to any **Claim** based upon or arising out of any criminal, dishonest, fraudulent or malicious conduct or other willful violation of laws, committed by any **Insured** or by anyone with the consent or knowledge of any **Insured**.

79. All counts directed against Clear, Mendez and the Firm in the Gonzales Lawsuit are based upon and arise out of alleged criminal and dishonest conduct, or other willful violation of laws, committed by Clear and Mendez.

80. Because the Criminal Conduct Exclusion applies to the Gonzales Lawsuit, and therefore precludes coverage, Travelers has no duty to defend or indemnify Clear, Mendez, and the Firm for the Gonzales Lawsuit under the Policies.

81. An actual and justiciable controversy exists between Travelers, Clear, Mendez and the Gonzales Parties with respect to their respective duties and obligations under the Policies, and specifically whether Travelers has a duty to defend or indemnify Clear, Mendez, and the Firm in connection with the Gonzales Lawsuit.

WHEREFORE, Plaintiff Travelers Casualty and Surety Company of America respectfully requests that this Court:

    d. Declare the rights and obligations of the parties under the Policy;

    e. Enter a declaratory judgment finding that, pursuant to the terms and conditions of the 2023 Policy and the 2024 Policy, Travelers has no obligation to defend or indemnify Clear, Mendez, or the Firm in connection with the Gonzales Lawsuit; and

    f. Grant Travelers its costs and such other relief as the Court may deem just and proper.

Respectfully submitted,

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

By: /s/ Cassandra R. Malone
Gary J. Van Luchene
Cassandra R. Malone
Jennings Haug Keleher McLeod Waterfall LLP
201 Third Street NW, Ste. 1200
Albuquerque, NM, 87102
(ph.) (505) 346-4646
(fax) (505) 346-1370
gvl@jkwlawyers.com
crm@jkwlawyers.com

and

Christopher J. Bannon
(admitted *pro hac vice*)
William F. Norman (admitted *pro hac vice*)
Aronberg Goldgehn Davis & Garmisa
225 W. Washington St., Ste. 2800
Chicago, IL 60606
(ph.) (312) 755-3175
(fax) (312) 828-9635
cbannon@agdglaw.com
wnorman@agdglaw.com

*Attorneys for Plaintiff Travelers Casualty and Surety Company of America*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 23rd day of July 2025, I electronically filed the foregoing pleading through the CM/ECF System, and that a copy of the same was electronically served to all counsel of record as more fully reflected on the Notice of Electronic Filing.

/s/ Cassandra R. Malone
Cassandra R. Malone

NM11312.0055 / 4926-1587-6695 v.1.docx