**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA

          Plaintiff,

                                    Civil Action No.: 1:25-cv-00259

      v.

CLEAR & CLEAR, P.A., THOMAS J. CLEAR III,
RICARDO MENDEZ, CARLOS SANDOVAL-
SMITH, PEDRO ANTHONY GONZALES, JOSE
DAVID VASQUEZ, ANTONIO ABELARDO
BARRON, MARY NICOLE TIXIER, JOHN DOES
1-5, and JANE DOES 1-5,

          Defendants.

## MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

    Travelers Casualty and Surety Company of America ("Travelers") respectfully submits this memorandum in support of its Motion for Default Judgment against defendants Clear & Clear, P.A. (the "Firm"), Thomas J. Clear III ("Clear"), and Ricardo Mendez ("Mendez"), (collectively, "Defendants"), and in support thereof states as follows:

### I.       INTRODUCTION

    Travelers filed suit seeking rescission of two professional liability insurance policies that it issued to the Firm, and for a declaratory judgment that Travelers has no duty to defend or indemnify any of the Defendants against two lawsuits currently pending in Bernalillo County, New Mexico. The Clerk of Court has entered default against Clear, Mendez, and the Firm, after diligent efforts to effectuate service upon them and, ultimately, service by publication. But they have not appeared in this action, nor answered or otherwise pled against the operative complaint. Travelers seeks no damages against Clear, Mendez, or the Firm, only declaratory relief, which is properly granted for the reasons set forth below.

## II.    FACTUAL BACKGROUND – ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

### A.  The 2023 and 2024 Policy Applications

Travelers first provided professional liability insurance coverage to the Firm for the **Policy Period** from May 10, 2022, to May 10, 2023, and in February 2023, the Firm sought renewal of the then-existing Travelers insurance policy. Travelers First Amended Complaint ("FAC"), Dkt. 15 ¶¶ 43-44. To that end, the Firm submitted to Travelers a Travelers 1st Choice+ Lawyers Professional Liability Coverage Small Firm Application, dated February 14, 2023, and signed by Clear (the "2023 Application"), seeking renewal of the previously issued Travelers lawyers professional liability insurance coverage. *Id.* ¶ 45; *see* Dkt. 15-5, 2023 Application.

The 2023 Application included the following question and the Firm's negative answer:

27. Do you or any member or employee of your firm have knowledge of any incident, act, error, or omission that is or could be the basis of a claim under this proposed professional liability policy? ☐Yes ☒No
*If yes, please complete a Claim, Suit, or Incident Supplement for each incident, act, error, or omission.*

Dkt. 15-5 at 5. Immediately above Clear's signature, the 2023 Application states in relevant part as follows:

> The undersigned Authorized Representative represents that to the best of his or her knowledge and belief, and after reasonable inquiry, the statements provided in this Application are true and complete, and may be relied upon by Travelers as the basis for providing insurance. The Applicant will notify Travelers of any material changes to the information provided.

Dkt. 15-5 at 6. After receiving the 2023 Application, and in reliance on the statements and information contained in it, Travelers issued a claims-made Travelers 1st Choice+ Lawyers Professional Liability Policy, No. 107633093, with a policy period May 10, 2023 to May 10, 2024 (the "2023 Policy"). Dkt. 15 ¶ 48.

In April 2024, the Firm sought renewal of the 2023 Policy. *Id.* ¶ 53. The Firm submitted to Travelers a 1st Choice+ Lawyers Professional Liability Coverage Small Firm Application, dated

April 19, 2024, and signed by Clear (the "2024 Application"), seeking renewal of the 2023 Policy. *Id.* ¶ 54. *See also* 2024 Policy Application, Dkt. 15-7. The 2024 Application included the following question and the Firm's negative answer:

> 21. Do you or any member or employee of your firm have knowledge of any incident, act, error, or omission that is or could be the basis of a claim under this proposed professional liability policy?    ☐ Yes   X No
> *If yes, please complete a Claim, Suit, or Incident Supplement for each incident, act, error, or omission.*

Dkt. 15-7 at 5. Immediately above Clear's signature, the Application states, in relevant part, as follows:

> The undersigned Authorized Representative represents that to the best of his or her knowledge and belief, and after reasonable inquiry, the statements provided in this Application are true and complete, and may be relied upon by Travelers as the basis for providing insurance. The Applicant will notify Travelers of any material changes to the information provided.

Dkt. 15-7 at 6. After receiving the 2024 Application, and in reliance on the statements and information contained in it, Travelers issued a claims-made Travelers 1st Choice+ Lawyers Professional Liability Policy, No. 107633093, with a policy period May 10, 2024, to May 10, 2025 (the "2024 Policy").

**B. The 2023 and 2024 Professional Liability Policies**

As demonstrated above, in reliance on Clear's representations disclaiming knowledge of any basis for a potential claim and averring the truth of that statement, Travelers issued the 2023 Policy, with a policy period of May 10, 2023 to May 10, 2024, and the 2024 Policy, with a policy period May 10, 2024 to May 10, 2025. Dkt. 15 ¶¶ 48 & 57. Both Policies have limits of liability for "Professional Services" that are $1,000,000 for each **Claim**[1], not to exceed $1,000,000 for all **Claims**, subject to each **Claim** deductible of $10,000. Dkt. 15-6 at 8; Dkt. 15-8 at 8.

Both Policies contain the following Insuring Agreement:

---

[1] Terms appearing in bold are as defined in the Policies.

> The Company will pay on behalf of the **Insured**, **Damages** and **Defense Expenses** for any **Claim** first made during the **Policy Period** that is caused by a **Wrongful Act** committed on or after any applicable Retroactive Date set forth in ITEM 5 of the Declarations, provided that no **Insured** on the Knowledge Date set forth in ITEM 5 of the Declarations had any basis to believe that such **Wrongful Act** might reasonably be expected to be the basis of a **Claim**.

Dkt. 15-6 at 12; Dkt. 15-8 at 12. Both Policies also contain the following exclusion, among others:

> E.    **Criminal, Dishonest, Fraudulent Or Malicious Conduct**
> This policy does not apply to any **Claim** based upon or arising out of any criminal, dishonest, fraudulent or malicious conduct, or other willful violation of laws, committed by any **Insured** or by anyone with the consent or knowledge of any **Insured**, provided that this exclusion will not apply to:
> 1.    any **Insured Person** who did not participate in or have knowledge of such conduct or violation; or
> 2.    the Company's duty to defend, or to pay **Defense Expenses** for, any **Claim** for malicious prosecution or abuse of process.

Dkt. 15-6 at 17; Dkt. 15-8 at 17.

## C. The Criminal Cases and Plea Agreements

On January 24, 2025, the U.S. District Attorney for the District of New Mexico, on behalf of the United States of America, filed *United States of America v. Ricardo Mendez*, case number 25-139 DHU in the U.S. District Court for the District of New Mexico (the "Mendez Criminal Case"). Dkt. 15 ¶ 37. On January 24, 2025, Mendez pled guilty, pursuant to a Plea Agreement filed in the Mendez Criminal Case (the "Mendez Plea Agreement"), to violation of 18 U.S.C. § 1962(d) (RICO Conspiracy); violation of 18 U.S.C. § 666(a)(2) (Bribery of an Agent of an Organization Receiving Federal Funds); violation of 18 U.S.C. § 1951(a) (Interference with Commerce by Extortion Under Color of Official Right, 18 U.S.C. § 2 Aiding and Abetting); and violation of 18 U.S.C. § 1951(a) (Conspiracy to Commit Interference with Commerce by Extortion Under Color of Official Right, 18 U.S.C. § 2 Aiding and Abetting). *Id.* ¶ 38; *see also* Mendez Plea Agreement, Dkt. 15-3. In the Mendez Plea Agreement, Mendez admitted, among other things:

> In 2007, I began working for co-conspirator 1's [Clear] law firm,…I admit that, **since at least 2008, this DWI scheme I participated in constituted an enterprise (the DWI Enterprise) that engaged in a pattern of racketeering activity that included multiple acts of bribery, chargeable under New Mexico state law, as well as multiple acts of interference commerce by extortion**. I further admit that the DWI Enterprise was ongoing organization with members who functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise. As part of this conspiracy, I admit that I agreed to commit, and did commit, at least two acts of racketeering in the conduct of the affairs of the DWI Enterprise.

Dkt. 15 ¶ 39; Dkt. 15-3 at 7 (emphasis added).

Then on February 12, 2025, the U.S. District Attorney for the District of New Mexico, on behalf of the United States of America, filed *United States of America v. Thomas J. Clear III*, case number 25-258 MLG in the U.S. District Court for the District of New Mexico (the "Clear Criminal Case"). Dkt. 15 ¶ 40; *see also* Clear Plea Agreement, Dkt. 15-4. On February 12, 2025, Clear pled guilty, pursuant to a Plea Agreement filed in the Clear Criminal Case (the "Clear Plea Agreement"), to violation of 18 U.S.C. § 1962(d) (RICO Conspiracy); violation of 18 U.S.C. § 666(a)(2) (Bribery of an Agent of an Organization Receiving Federal Funds); violation of 18 U.S.C. § 1951(a) (Attempted Interference with Commerce by Extortion under Color of Official Right, 18 U.S.C. § 2 Aiding and Abetting); and violation of 18 U.S.C. § 1951(a) (Interference with Commerce by Extortion Under Color of Official Right, 18 U.S.C. § 2 Aiding and Abetting). Dkt. 15 ¶ 41. In the Clear Plea Agreement, Clear admitted, among other things:

> **I admit that, since at least the late 1990s, and in violation of the New Mexico Rules of Professional Conduct that applied to me as a licensed attorney, I was the leader of an enterprise (the DWI Enterprise) that engaged in a pattern of racketeering activity that included multiple acts of bribery, chargeable under New Mexico state law, as well as multiple acts of interference commerce by extortion**. I further admit that the DWI Enterprise was an ongoing organization with members who functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise. As part of this conspiracy, I admit that I agreed to

commit, and did commit, at least two acts of racketeering in the
conduct of the affairs of the DWI Enterprise.

Dkt. 15 ¶ 42; Dkt. 15-4 at 8 (emphasis added). Travelers would not have issued either of the

Policies had it been made aware of the matters to which Clear and Mendez admitted in the

foregoing criminal pleas. Dkt. 15 ¶¶ 63 & 69.

### D.  The Sandoval-Smith Lawsuit

On October 1, 2024, Defendant Carlos Sandoval-Smith ("Sandoval-Smith") filed suit

against Clear and Mendez, among others in the Second Judicial District Court, Bernalillo County,

New Mexico, captioned *Carlos Sandoval-Smith v. The City of Albuquerque*, Case No. D-202-CV-

2024-07742 (the "Sandoval-Smith Lawsuit"). Dkt. 15 ¶ 15; *see also* Sandoval-Smith First

Amended Complaint ("FAC"), Dkt. 15-1. In his suit, Sandoval-Smith alleged that Clear and

Mendez had an agreement with various Albuquerque police officers ("APOs") that the APOs

would refer people charged with driving while intoxicated ("DWI") to Clear (an attorney) and

Mendez (Clear's paralegal/legal assistant) for legal services, and the APOs would agree not to

attend pre-trial interviews or testify in those individuals' criminal cases in exchange for

consideration from Clear and Mendez. Dkt. 15 ¶ 16. Sandoval-Smith further alleged that after he

was arrested for DWI, an APO informed him, while he was in police custody, that the APO had

an attorney friend who could make the DWI charge go away and further that the arresting APO

provided Sandoval-Smith with Clear's contact information, and that Sandoval-Smith subsequently

received a call from Clear's office. *Id.* ¶¶ 17-18.

Sandoval-Smith alleged that he met with Mendez at Clear's office, at which time Mendez

informed Sandoval-Smith that their office would guarantee that the DWI would not go on

Sandoval-Smith's record if he retained Clear, and Mendez demanded payments from Sandoval-

Smith, some of which Clear and Mendez planned to use to compensate the arresting APO for his

participation in the alleged criminal enterprise. *Id.* ¶ 19. Sandoval-Smith further alleged that APOs engaged in the same or similar conduct to compel or attempt to compel individuals arrested for DWI to retain Clear as an attorney and to refrain from retaining any other attorney in exchange for compensation from Clear and Mendez. *Id.* ¶ 20. Sandoval-Smith asserted that the DWI and speeding charges against him were subsequently dismissed. *Id.* ¶ 21.

Sandoval-Smith alleged that Clear and Mendez were part of a criminal enterprise and that members of the enterprise engaged in acts of bribery, fraud and extortion, all of which are incidents of racketeering as defined by NMSA 1978, §30-42-3(D). *Id.* ¶ 22. He further alleged that Clear and Mendez, as persons employed by or associated with the enterprise, conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs by engaging in a pattern of racketeering activity. *Id.* ¶ 23. Sandoval-Smith amended his complaint in the Sandoval-Smith Lawsuit on April 2, 2025, adding the Firm as a defendant and alleging that the Firm was negligent in hiring, training, supervision and retention of Clear and Mendez. *Id.* ¶ 24.

### E.  The Gonzales Lawsuit

Defendants Pedro Anthony Gonzales ("Gonzales"), Jose David Vasquez ("Vasquez"), Antonio Abelardo Barron ("Barron"), and Mary Nicole Tixier ("Tixier"), and the John and Jane Does (collectively, the "Gonzales Parties") filed a class action lawsuit against Clear and Mendez, among others, on February 12, 2025, in the matter captioned *Pedro Anthony Gonzales, et al. v. The City of Albuquerque et al.,* venued in the State of New Mexico County of Bernalillo Second Judicial District Court under Case No. D-202-CV-2025-01387 ("the Gonzales Lawsuit"). *Id.* ¶ 27. The Gonzales Parties amended their complaint in the Gonzales Lawsuit on March 14, 2025, adding the Firm as a defendant, and the Gonzales Parties alleged the same DWI extortion scheme as Sandoval-Smith. *Id.* ¶¶ 28-29. Specifically, the Gonzales Parties alleged in the Gonzales Lawsuit

that, since at least 2008, Clear and Mendez were part of a criminal scheme with the APOs, who would agree not to attend pre-trial interviews or testify in proceedings in exchange for consideration from Clear and Mendez, including cash, favors, and other valuable property. *Id.* ¶ 30.

The Gonzales Parties alleged that Clear and Mendez, among others, committed Racketeering in violation of NMSA 1978, § 30-42-4, that they committed extortion to compel the Gonzales Parties to hire them as their attorney, and that they reinvested the proceeds of the racketeering activity back into the enterprise. *Id.* ¶ 32. The Gonzales Parties similarly alleged that Clear, Mendez, and other defendants committed extortion as part of a racketeering enterprise in violation of 18 U.S.C. § 1962 and they assert one count against the Firm for negligent hiring, training, supervision, and retention of Clear and Mendez. *Id.* ¶ 33-34.

### F.   The Declaratory Judgment Action, Jurisdiction, and Entry of Defaults

On March 12, 2025, Travelers filed this action against Clear, Mendez, the Firm, and Sandoval-Smith for rescission of the 2023 and 2024 Policies and for a declaratory judgment of no duty to defend or indemnify Clear or Mendez for the Sandoval-Smith Lawsuit due to the Criminal Conduct Exclusion of those Policies. Dkt. 1. Upon discovery of the Sandoval-Smith FAC and the Gonzales Lawsuit, Travelers filed its First Amended Complaint, the operative pleading in this case, and added the Gonzales Parties as defendants. Dkt. 15.

Travelers is an insurance company incorporated under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut. Travelers, therefore, is a citizen of Connecticut. *Id.* ¶ 3. The Firm is a professional corporation organized and existing under the laws of New Mexico and maintains its principal place of business in New Mexico. The Firm, therefore, is a citizen of New Mexico. *Id.* ¶ 4. Clear is an individual who, upon information and

belief, is domiciled in New Mexico. Clear, therefore, is a citizen of New Mexico. *Id.* ¶ 5. Mendez is an individual who, upon information and belief, is domiciled in New Mexico. Mendez, therefore, is a citizen of New Mexico. *Id.* ¶ 6. According to Travelers' investigation in attempts to serve process upon Clear, Mendez, and the Firm, all of their last known addresses are in the State of New Mexico. Dkt. 9 at 2-3.

Unable to serve process upon Clear, Mendez, or the Firm after diligent efforts, Travelers moved the Court on May 21, 2025, *inter alia*, for permission to serve them by publication as contemplated by Rule 1-004(K)(4) NMRA. *See id*. Magistrate Judge Rozzoni granted that motion in part on July 30, 2025, allowing Travelers to serve Clear, Mendez, and the Firm by publication and extended the deadline for service of process. Dkt. 16. Travelers filed an Affidavit of Publication on September 3, 2025, indicating that the third of three publication dates in the Albuquerque Journal occurred on August 28, 2025. Dkt. 26-1. Thus, service upon Clear, Mendez, and the Firm was "complete 'on the date of the last publication'" *i.e.*, August 28, 2025. *See* Dkt. 16 at 12. On December 31, 2025, Travelers also filed an Affidavit of Publication in the Albuquerque Journal indicating publication of the Court's Initial Scheduling Order as of December 26, 2025. Dkt. 38.

On January 13, 2026, Travelers filed a Notice of Lack of Military Service stating that, after investigation with the Department of Defense Manpower Data Center, that neither Clear nor Mendez was on active duty with any branch of military service of the United States. Dkt. 39. Also on January 13, 2026, Travelers filed a Praecipe for the Clerk of this Court to enter defaults against Clear, Mendez, and the Firm pursuant to Fed. R. Civ. P. 55(a). Dkt. 40. On January 14, 2026, the

Clerk of this Court, Mitchell R. Elfers, entered default pursuant to Rule 55(a) against Clear, Mendez, and the Firm. Dkt. 41.[2]

### III.    ANALYSIS

#### A. Default Judgment is Properly Entered Against Clear, Mendez, and the Firm

A party seeking default against a defendant who has failed to answer or plead must (1) obtain the party's default from the clerk and then (2) "apply to the court for a default judgment." Fed. R. Civ. P. 55. The Clerk entered default against Clear, Mendez, and the Firm on January 14, 2026. Service has also been effected upon Clear, Mendez, and the Firm. Dkts. 16 & 26 (authorizing service by publication and affidavit indicating that service by publication is complete). See *Rogers v. Hartford Life & Acc. Ins. Co.,* 167 F.3d 933, 937 (5th Cir. 1999) ("Until the plaintiff serves the defendant, the defendant has no duty to answer the complaint and the plaintiff cannot obtain a default judgment."); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

Once default is entered, "the district court properly [takes] as true all factual allegations in the complaint, except those pertaining to the amount of damages." *Archer v. Eiland*, 64 Fed. Appx. 676, 679 (10th Cir. 2003). Here, Travelers does not seek damages but rather rescission of the Policies and a declaration that it has no duty to defend or indemnify Clear, Mendez, or the Firm for either the Sandoval-Smith Lawsuit or the Gonzales Lawsuit due to the Criminal Conduct Exclusion of those Policies.

---

[2] Sandoval-Smith and the Gonzalez Parties have stipulated to be bound by any judgment entered in this action, and Travelers and those parties have accordingly stipulated that they be dismissed from the case. Dkt. 46. Therefore, upon Sandoval-Smith's and the Gonzalez Parties' dismissal, Clear, Mendez and the Firm are the only parties remaining in the case.

### B. The 2023 and 2024 Policies are Properly Rescinded

Travelers is entitled to rescission of the 2023 Policy and the 2024 Policy (the "Policies").[3] Under New Mexico law, an insurer generally has the right to rescind an insurance policy obtained as the result of an insured's material misrepresentation in applying for insurance. *John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 504 (10th Cir. 1994). The misrepresentation need not have been made knowingly or fraudulently. *Prudential Ins. Co. of America v. Anaya*, 78 N.M. 101, 104 (1967). The misrepresentation must be material, though, meaning the insurer relied on it in issuing the policy and would not have issued the policy had the insured provided correct information on the application. *Weisman*, 27 F.3d at 504.

Clear submitted, on behalf of the Firm, the 2023 Application and the 2024 Application, disclaiming knowledge of any incident, act, error, or omission that could be the basis of a claim. Dkt. 15 ¶¶ 43-45, 53-55. Clear represented in both applications that those statements were true, and Travelers issued the Policies in reliance upon those representations. Dkt. 15-5 at 5-6; Dkt. 15-7 at 5-6. As evidenced by the Clear and Mendez guilty pleas of criminal activity going back to the late 1990s, and further by Clear's admission of violating the New Mexico Rules of Professional Conduct and engaging in a criminal conspiracy involving his legal practice and impacting his clients, those representations were untrue. See Dkt. 15 ¶¶ 37-42; Dkt. 15-3 at 7; Dkt. 15-4 at 8. Clear's knowledge of his involvement in criminal conduct while representing clients, including admitted knowledge that he was violating ethical rules in the process, constitutes knowledge of acts, errors or omissions that could be the basis of a claim under a professional liability insurance policy. See *Evanston Ins. Co. v. Desert State Life Management*, 484 F.Supp.3d 987, 1042 (D.N.M

---

[3] Travelers seeks the Policies' rescission in Counts I and II of the First Amended Complaint. Dkt. 15 at 12-14.

2020) (noting that a trust company CEO's misappropriation of funds for his own use was conduct that would lead a reasonable person to conclude that a claim was likely to result under a professional services policy), *affirmed, rev'd, in part, on other grounds, and remanded*, 56 F.4th 899 (10th Cir. 2022). And Travelers would not have issued either the Policies if it had been made aware of the facts admitted by Clear and Mendez in their respective plea agreements. *Id.* ¶¶ 63 & 69.[4]

Given that the Policies were obtained as the result of Clear's and the Firm's misrepresentation in applying for them, and Travelers relied on the misrepresentations in issuing the Policies and would not have issued them Clear and the Firm provided correct information, the Policies are properly rescinded and declared null and void.

### C. The Criminal Conduct Exclusion Absolves Travelers of any Duty to Defend or Indemnify Clear, Mendez, or the Firm under the Policies

Travelers is also entitled to a declaration that it has no duty to defend Clear, Mendez, or the Firm against the Sandoval-Smith Lawsuit and the Gonzales Lawsuit (the "Lawsuits"), both because the Policies are rescinded and because, even if they were not rescinded, the Policies' Criminal Conduct Exclusions would apply to bar coverage for the Lawsuits.[5]

The Policies' Criminal Conduct Exclusions are straightforward, and so is their application to the Sandoval-Smith and Gonzales Lawsuits. They exclude from coverage "any **Claim** based upon or arising out of any criminal, dishonest, fraudulent or malicious conduct, or other willful violation of laws, committed by any **Insured** or by anyone with the consent or knowledge of any **Insured**," as is plainly the case here. Dkt. 15-6 at 17; Dkt. 15-8 at 17. New Mexico courts apply

---

[4] Furthermore, Travelers has made reasonable efforts to tender to the Firm all amounts paid as premiums for the Policies. Dkt. 15 ¶¶ 65 & 71.

[5] Travelers seeks a declaratory judgment of no duty to defend or indemnify for the Lawsuits in Counts III and IV of the First Amended Complaint. Dkt. 15 at 14-16.

similar exclusions where the conduct alleged is criminal in nature. See *New Mexico Physicians Mut. Liability Co. v. LaMure*, 116 N.M. 92, 98 (1993) (collecting cases and "find[ing] the policies' criminal acts exclusions applicable and enforceable"). Moreover, the allegations and claims pled against Clear and Mendez in both lawsuits sound in bribery, fraud and extortion, all of which are criminal acts. See Dkts. 15-1 & 15-2.

Sandoval-Smith and the Gonzales Parties also assert causes of action against the Firm for negligent hiring and supervision (Dkt. 15 ¶¶ 24 & 33-34), and the Policies' Criminal Conduct Exclusions apply equally to those causes of action. Any damage from the Firm's purported negligence would arise from the excluded conduct that is the subject of the Criminal Conduct Exclusions and, therefore, Travelers has no duty to defend or indemnify the Firm for the negligent hiring claims. See *Lopez v. New Mexico Public Schools Ins. Authority*, 117 N.M. 207, 2019 (1994) ("[t]he damages from negligence in hiring Madrid arise from the uninsured risk of sexual misconduct, and thus there is no duty to defend a claim for negligence in hiring"); *Liberty Mut. Fire Ins. Co. v. Lyons*, No. 20-2152, 2021 WL 4592269, at *2 (10th Cir. Oct. 6, 2021) (affirming that insurer had no duty to defend or indemnify because negligence claim was inseparable from criminal acts alleged).

The Court can determine these coverage issues as a matter of law. See e.g., *W. Am. Ins. Co. v. Atyani*, 366 F. Supp. 3d 1270, 1281 (D.N.M. 2019) (interpreting *Lopez* and holding no duty to defend); *Capitol Specialty Ins. Corp. v. Sw. Clubs, Inc.*, No. 12-01299 MCA/LAM, 2014 WL 11515028, at *11 (D.N.M. Mar. 31, 2014) (same). Given the demonstrable criminal activity at the heart of the Lawsuits and the plain language of the Policies' Criminal Conduct Exclusions, the Court should enter a declaratory judgment that Travelers had no duty to defend or indemnify Clear, Mendez, or the Firm against those suits.

IV.    **CONCLUSION**

The Clerk has defaulted Clear, Mendez, and the Firm for their failure to answer or otherwise plead against the First Amended Complaint following extensive efforts to effectuate service via personal delivery and publication. Taking Travelers' allegations as true, default judgment is properly entered against them on all counts of the First Amended Complaint. The Court should therefore rescind the 2023 Policy and the 2024 Policies and declare that Travelers has no duty defend or indemnify Clear, Mendez, or the Firm against the Sandoval-Smith Lawsuit and the Gonzales Lawsuit.

Respectfully submitted,

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

By: */s/ Cassandra R. Malone*_____
Gary J. Van Luchene
Cassandra R. Malone
Jennings Haug Keleher McLeod Waterfall LLP
201 Third Street NW, Ste. 1200
Albuquerque, NM, 87102
(ph.) (505) 346-9165
(fax) (505) 346-1370
gvl@jkwlawyers.com
crm@jkwlawyers.com

and

Christopher J. Bannon (*admitted pro hac vice*)
William F. Norman (*admitted pro hac vice*)
Aronberg Goldgehn Davis & Garmisa
225 W. Washington St., Ste. 2800
Chicago, IL 60606
(ph.) (312) 755-3175
(fax) (312) 828-9635
cbannon@agdglaw.com
wnorman@agdglaw.com

*Attorneys for Plaintiff Travelers Casualty and Surety Company of America*

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March 2026, I electronically filed the foregoing pleading through the CM/ECF System, and that a copy of the same was electronically served to all counsel of record as more fully reflected on the Notice of Electronic Filing.

 /s/ *Cassandra R. Malone*
Cassandra R. Malone

NM11312.0055 / 4928-2623-3750, v. 1